UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

HUI YE,                               :
                                      :
                    Plaintiff,        :
                                      :      No. 14 Civ. 7683 (JFK)
     -against-                        :
                                      :      **OPINION & ORDER**
GOLD SCOLLAR MOSHAN PLLC, ALLISON,    :
SCOLLAR, MICHAEL J. MOSHAN,           :
KATHERINE KOKKOSIS, and ROBERT B.     :
GOLD,                                 :
                                      :
                    Defendants.       :

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/30/2015

APPEARANCES


FOR PLAINTIFF HUI YE:
     Vivian Chen
     WONG, WONG & ASSOCIATES, P.C.

FOR DEFENDANT ROBERT B. GOLD:
     Edward L. Powers
     ZUCKERMAN GORE BRANDEIS & CROSSMAN, LLP

**JOHN F. KEENAN, United States District Judge:**

     Before the Court is Defendant Robert B. Gold's motion to
dismiss for lack of personal jurisdiction.  For the reasons that
follow, the motion is denied.

## I. Background

     The following facts are drawn from the complaint and
supporting documents, and are accepted as true only for purposes
of this motion.  Plaintiff Hui Ye is a resident of the People's
Republic of China. (Compl. ¶ 4.)  Defendant Gold Scollar Moshan,
PLLC ("GSM") is a New York law firm organized under New York

law. (Id. ¶ 5.)  Defendants Robert B. Gold, Allison Scollar,
Michael Moshan, and Katherine Kokkosis (together with GSM, the
"Defendants") are identified in the complaint as attorneys who
worked for GSM during the time period at issue. (Id. ¶¶ 6-9.)

    In or around 2013, Plaintiff retained GSM to represent her
in connection with the purchase of an apartment at 400 Central
Park West, New York, New York. (Id. ¶ 12.)  Thereafter,
Plaintiff informed Defendants that she did not plan to appear in
person at the closing on the apartment, which was scheduled to
take place at the end of August 2014. (Id. ¶¶ 13, 18.)
Defendants allegedly advised Plaintiff that she did not need to
attend the closing in person as long as she wired the funds
required to complete the purchase into GSM's Interest-on-Lawyer
Account (the "IOLA Account"). (Id. ¶ 14.)  According to the
complaint, Plaintiff did so on or about January 8, 2014, wiring
$1,044,533 (the "Closing Funds") into the IOLA Account (Id. ¶
16.)

    On August 11, 2014, GSM sent a letter to Plaintiff
informing her that her funds had gone missing. (Id. ¶ 19.)  The
letter read as follows:

    Dear Sir/Madam,

    I wanted to let you know that we have recently
    identified a significant shortfall in our Attorney
    Trust account.  I am sorry to say that this makes it

> impossible to proceed with your closing.  We have
> hired a forensic accounting firm to help us figure out
> exactly what happened, but until their work is further
> along, I cannot say much more.  I am horrified by what
> has occurred and am working as quickly as possible to
> understand and address what happened.  We will let you
> know as soon as I can say anything more.

(Decl. of Vivian Chen, Ex. B, ECF No. 45.)  The letter was signed by Defendant Michael Moshan.

Plaintiff alleges that, despite repeated demands, GSM has not returned the Closing Funds. (Compl. ¶ 22.)  As a result, Plaintiff filed a complaint with this Court on September 23, 2014, asserting claims against all Defendants for legal malpractice, breach of fiduciary duty, misappropriation, conversion, and fraud.  Plaintiff's allegations include that "instead of holding on to the [Closing Funds] on behalf of Plaintiff . . . , Defendants have retained the [Closing Funds] to [sic] their own use." (Id. ¶ 20.)  Plaintiff also alleges that "Defendants, and each of them, stand as fiduciaries with respect to Plaintiff," and "violated their fiduciary duties by negligently failing to maintain and preserve Plaintiff's [Closing Funds]." (Id. ¶¶ 44, 49.)

In response to the complaint, the Defendants have filed various cross-claims, including a cross-claim by Defendant Scollar against Defendant Gold and the other named Defendants.

Gold now moves to dismiss the complaint and cross-claim for lack of personal jurisdiction.  In his motion and supporting declarations, Gold disputes his involvement in the alleged misconduct and asserts that he has had no association with GSM since 2009. (Decl. of Robert B. Gold, ECF No. 40 ¶¶ 5, 11.) Gold also states that, although he owns a summer home in Southampton, New York, he now lives and works in California. (Id. ¶¶ 2, 14.)  In response, Plaintiff contends that Gold continued his association with GSM from California after 2009, and that Gold's alleged tortious acts committed from California give rise to jurisdiction under New York's long-arm statute. (Pl.'s Mem. at 5-8.)

## II. Discussion

### A. Motion to Dismiss Standard

Where a motion to dismiss under Rule 12(b)(2) is brought prior to discovery, to defeat the motion a plaintiff must only make a prima facie showing of jurisdiction through the allegations in the complaint and any supporting documents. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (recognizing that, until an evidentiary hearing is held, "a prima facie showing suffices, notwithstanding any

4

controverting presentation by the moving party").  In so doing, the plaintiff must show that jurisdiction is proper under the laws of the state in which the court sits, and is consistent with federal due process standards. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002). Where the defendant is properly before the court on the claims asserted in the complaint, the court may also exercise personal jurisdiction over related cross-claims. See United States v. All Right, Title & Interest in Accounts at Morgan Guar. Trust Co., No. 95 CIV. 10929 HB THK, 1996 WL 695671, at *13 (S.D.N.Y. Dec. 5, 1996).

### B. Analysis

### 1. New York law

Turning first to New York's jurisdictional requirements, the Court finds that Plaintiff has made a prima facie showing that jurisdiction is proper under New York's long-arm statute, N.Y. C.P.L.R. § 302(a).  Pursuant to Section 302(a)(3) of that provision, New York courts may exercise jurisdiction over an out-of-state defendant where the non-domiciliary "commits a tortious act without the state causing injury to person or property within the state," if he "regularly does or solicits business, or engages in any other persistent course of conduct in New York." C.P.L.R. § 302(a)(3)(i).  Courts within New York have interpreted this provision as requiring four elements:

(1) that the defendant committed a tortious act outside New York; (2) that the cause of action arises from that act; (3) that the act caused injury to a person or property in New York; and (4) that the defendant regularly does or solicits business, or engages in any other persistent course of conduct in the state. Virgin Enterprises Ltd. v. Virgin Eyes LAC, No. 08 CV 8564(LAP), 2009 WL 3241529, at *5 (S.D.N.Y. Sept. 30, 2009).

Although Gold disputes his involvement in the alleged misconduct, at this stage the Court must view the facts in the light most favorable to Plaintiff and resolve any factual disputes in Plaintiff's favor. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (recognizing that before an evidentiary hearing is held, "a prima facie showing [of jurisdiction] suffices, notwithstanding any controverting presentation by the moving party") see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (finding that the district court erred in resolving a factual dispute in the defendant's favor despite the defendant's production of "direct, highly specific testimonial evidence regarding a fact essential to jurisdiction").

Here, Plaintiff alleges that she retained all of the named Defendants in connection with the purchase of a New York City apartment. (Compl. ¶ 12.) Based on this alleged relationship, the Defendants, including Gold, would have owed Plaintiff a

6

fiduciary duty to safeguard property that Plaintiff entrusted to them. See In re Hayes, 183 F.3d 162, 168 (2d Cir. 1999) (recognizing that an attorney's fiduciary duties to his or her client include the duty to safeguard client property). Plaintiff asserts that Gold breached this duty from California by allowing the $1,044,533 Plaintiff transferred to GSM to be converted and misappropriated from the firm's IOLA Account—an account on which Gold allegedly served as an authorized signatory. (See Compl. ¶¶ 44, 49, 53; Chen Decl., Ex. D.; Pl.'s Mem. at 5-7.)  Taken together, these allegations establish a "colorable cause of action" against Gold for breach of fiduciary duty, which is sufficient to satisfy the first element under Section 302(a)(3)(i). Bank Brussels, 305 F.3d at 125.

Gold also argues that jurisdiction is improper because no affirmative "act" by Gold is alleged in the complaint.  In so arguing, Gold seems to suggest that Section 302(a)(3)'s requirement of a "tortious act" precludes jurisdiction over claims arising from acts of omission.  This unsupported suggestion is controverted by Second Circuit case law. See Bank Brussels, 305 F.3d at 125-27 (finding jurisdiction under Section 302(a)(3) proper on the basis of a law firm's alleged tortious failure to disclose information to its client); see also Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 37-38 (2d Cir. 2010) (recognizing that "the New York State Legislature adopted

section 302(a)(3) for the purpose of broaden[ing] New York's
long-arm jurisdiction so as to include non-residents who cause
tortious injury in the state by an act or omission without the
state." (internal quotation marks omitted) (emphasis added)).
Thus, even if the complaint did fail to allege an affirmative
act by Gold, that fact would not render jurisdiction improper.

        The next two elements required for jurisdiction under
Section 302(a)(3)(i) do not appear to be in dispute.  Plaintiff
has alleged that her cause of action arises from Gold's tortious
conduct, which satisfies the second element. (Compl. ¶¶ 52-55.)
Plaintiff has also sufficiently alleged an injury in New York
because "the first effect of the tort" would have been felt in
New York, where the funds were allegedly misappropriated and
where the closing on the apartment was scheduled to occur. See
Bank Brussels, 305 F.3d at 123.

        Lastly, Plaintiff's allegations and supporting documents
are sufficient at this stage to support a finding that Gold has
regularly done business or engaged in a "persistent course of
conduct" in New York. C.P.L.R. § 302(a)(3)(i).  Specifically,
Gold is alleged to have been member of GSM, a New York law firm,
during the time period at issue. (Compl. ¶ 9.)  This allegation
is supported by the fact that GSM's August 11, 2014 letter to
Plaintiff listed Gold's name on the firm's letterhead. (Chen
Decl., Ex. B.)  Gold is also alleged to be a member of the New

York bar. (Compl. ¶ 9.)  Furthermore, according to records produced by Plaintiff, Gold served as a signatory on the New York—based IOLA Account where Plaintiff's funds were allegedly deposited. (Chen Decl., Ex. D.)  Thus, resolving any factual disputes over Gold's continued involvement with GSM in Plaintiff's favor, Plaintiff has made a prima facie showing of jurisdiction under Section 302(a)(3)(i).  The Court therefore need not address Plaintiff's alternative arguments for jurisdiction under Sections 302(a)(1) and 302(a)(2).

### 2. Due Process

Having resolved the state-law jurisdictional questions, the Court must next determine whether exercising jurisdiction would comport with federal due process requirements.  For jurisdiction to be consistent with due process, the defendant must have "certain minimum contacts" with the forum, which "exist where the defendant purposefully availed itself of the privilege of doing business in [New York] and could foresee being haled into court there." Licci, 732 F.3d at 170.  If the court finds that such contacts exist, it must then determine "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (internal quotation marks omitted).  In so doing, relevant factors may include:  "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the

interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief." <u>Licci</u>, 732 F.3d at 170.

Here, Gold's alleged roles as a member and manager of GSM and a signatory on the firm's New York-based IOLA Account would make it foreseeable that Gold could be haled to Court in New York on claims arising from those contacts.  Furthermore, Gold has failed to present any argument that "the presence of some other considerations would render jurisdiction unreasonable." <u>Licci</u>, 732 F.3d at 173.  The Court nonetheless notes that, at this stage, jurisdiction in New York does not appear unreasonable.  New York courts have a significant interest in resolving the claims at issue here as they involve alleged misconduct by New York attorneys. <u>See</u> <u>Diversified Grp., Inc. v. Daugerdas</u>, 139 F. Supp. 2d 445, 452 (S.D.N.Y. 2001).  Moreover, as GSM is a New York law firm and the IOLA Account was maintained at a New York bank, it appears that jurisdiction in New York would advance Plaintiff's interest in obtaining convenient and effective relief.  Although jurisdiction in New York may burden Gold to the extent he may be required to travel from California to New York, this burden appears to be mitigated by the fact that Gold owns a home in Southampton, New York.

Thus, the Court finds that exercising jurisdiction at this stage is reasonable and comports with the requirements of due process.

## Conclusion

For the foregoing reasons, the Court finds that Plaintiff has made a prima facie showing that exercising personal jurisdiction over Gold at this stage is proper.  Accordingly, Gold's motion to dismiss the complaint and cross-claim is denied.

**SO ORDERED.**

Dated:     New York, New York
           October 30, 2015

                                        _John F. Keenan_____
                                            John F. Keenan
                                        United States District Judge